IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| VOX MARKETING GROUP, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>PRODIGY PROMOS L.C., a Utah limited liability company; et al.,<br><br>    Defendants.<br>_____<br><br>PRODIGY PROMOS L.C., a Utah limited liability company,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>VOX MARKETING GROUP, LLC, a Utah limited liability company; et al.,<br><br>    Counterclaim Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br><br>Case No. 2:18-cv-00632-HCN-JCB<br><br><br><br><br><br><br><br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

    This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C.

§ 636(b)(1)(A).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge

Jared C. Bennett.[2] Before the court are Defendants Prodigy Promos, L.C. ("Prodigy"); Jason

---

[1] ECF Nos. 28, 57.

[2] ECF No. 168.

Marsh; Jon Priday; Tyler Fredrickson; Eric Oldson; Spencer Oldson; and Michael Perley's (collectively, "Prodigy Defendants") (1) Motion to Maintain Confidential Designation of Aptegra Files ("Aptegra Files Motion");[3] and (2) Motion to Maintain Confidential and Highly Confidential Designations of Deposition Exhibits ("Deposition Exhibits Motion").[4]  Both motions were filed under DUCivR 37-1.  After considering the motions, the court ordered the parties to submit additional briefing on both motions pursuant to DUCivR 37-1(a)(7)(C).[5]  The court has carefully reviewed the original motions, as well as the parties' supplemental memoranda.  Under DUCivR 7-1(f), the court concludes that oral argument is not necessary and, therefore, decides the motions on the written memoranda.

## RELEVANT BACKGROUND

The disputes that are the subject of the motions before the court relate to the Prodigy Defendants' designations of certain information as Protected Information ("PI") under the Stipulated Protective Order ("SPO"), which was entered by the state court in this action prior to removal.[6]  The relevant background related to each motion is set forth below.

### I. Aptegra Files Motion

Prior to removal of this action to this court, the state court issued a prejudgment writ directing a third party, Decipher Forensics ("Decipher"), to create forensic images of electronic

---

[3] ECF No. 83.

[4] ECF No. 84.

[5] ECF No. 124.

[6] ECF No. 2-11.

storage devices at Prodigy's offices. In December 2016, the Prodigy Defendants served a subpoena on Decipher commanding it to produce copies of the forensic images. In response, Decipher produced those copies to all parties. According to Plaintiff Vox Marketing Group, LLC ("Vox"), the Prodigy Defendants used the SPO to place a blanket designation on the forensic images of Highly Confidential Information – Attorneys' Eyes Only ("AEO"), which is a subset of PI under the SPO.

Some of the Prodigy files and devices were protected by passwords. Rather than allowing Vox or its attorneys to directly access those files and devices, the state court ordered a different third party, Aptegra Consulting, LLC ("Aptegra"), to conduct searches of the files and devices to identify only those materials relevant to the issues in this case. Aptegra produced certain files (collectively, "Aptegra Files"), which contain text messages among the individual Prodigy Defendants, all of whom are either principals or employees of Prodigy. The Prodigy Defendants used the SPO to place designations on the Aptegra Files of Confidential Information ("CI"), which is also a subset of PI under the SPO. Vox challenged the designations for certain lines of the Aptegra Files (collectively, "Subject Lines") as being improper under the SPO and requested that the Prodigy Defendants remove the CI designations from the Subject Lines.[7] The parties were unable to reach an agreement on Vox's challenge, which led to the filing of the Aptegra Files Motion.

---

[7] In its original response to the Aptegra Files Motion, Vox has indicated that it has withdrawn its request for de-designation of the portions of the Subject Lines highlighted in gray in Exhibits 2-4 to its response. ECF No. 96-1 to 96-3. Accordingly, those portions of the Subject Lines are not covered by the instant Memorandum Decision and Order.

## II.     Deposition Exhibits Motion

Vox has conducted the depositions of the individual Prodigy Defendants. During those depositions, the parties referred to numerous documents, all of which were marked as deposition exhibits. The Prodigy Defendants used the SPO to place either a CI or an AEO designation on some of those exhibits. Vox challenged the designation of certain exhibits (collectively, "Deposition Exhibits") as being improper under the SPO and requested that the Prodigy Defendants remove the designations from the Deposition Exhibits. The parties again were unable to reach an agreement on Vox's challenge, which led to the filing of the Deposition Exhibits Motion.

## ANALYSIS

As noted above, both motions before the court relate to the Prodigy Defendants' designations of certain information as PI under the SPO. The SPO defines PI as "confidential or proprietary technical, scientific, financial, business, health, or medical information designated as such by the producing party."[8] The SPO provides that "[t]he burden of proving that the designation is proper shall be upon the producing party."[9]

With those provisions of the SPO in mind, the court turns to addressing the merits of the Aptegra Files Motion and the Deposition Exhibits Motion. Based upon the reasoning set forth below, both motions are denied.

---

[8] ECF No. 2-11 at ¶ II(a).

[9] *Id.* at ¶ VIII(c).

### I.       Aptegra Files Motion

The Prodigy Defendants argue that the CI designations placed upon the Subject Lines should remain in place because: (A) the Subject Lines qualify as PI under the SPO; and (B) the court should issue a protective order under Fed. R. Civ. P. 26(c) permitting the CI designations on the Subject Lines to remain in place. Based upon the following analysis, the court concludes that those arguments fail. Therefore, the court denies the Aptegra Files Motion and orders that the CI designations be removed from the Subject Lines.

#### A.       The Subject Lines Do Not Qualify as PI Under the SPO.

The parties proffer differing interpretations of the definition of PI under the SPO. The Prodigy Defendants assert that PI covers two types of information: (1) "confidential" information; and (2) "proprietary information" that is "technical, scientific, financial, business, health, or medical information."[10] Vox, on the other hand, argues that the SPO allows for designation of information as PI only if it is "confidential or proprietary" information that is also "technical, scientific, financial, business, health, or medical information."[11] The court agrees with Vox's interpretation and concludes that the Prodigy Defendants' interpretation is untenable.

In reaching that conclusion, the court relies upon *noscitur a sociis*, which is "[a] canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be determined by the words immediately surrounding it." *Noscitur a sociis*, BLACK'S LAW

---

[10] *Id.* at ¶ II(a).

[11] *Id.*

DICTIONARY (11th ed. 2019); *see also* 11 WILLISTON ON CONTRACTS § 32:6 (4th ed.) ("The ancient maxim *noscitur a sociis* summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated words."). "While not always taken into account, *noscitur a sociis* is applicable to 'all written instruments' where any word or phrase is doubtful; and the 'meaning of a term may be . . . restrained by reference' to the words that surround it." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1064 (D. Colo. 2013) (quoting *Virginia v. Tennessee*, 148 U.S. 503, 519 (1893)) (alteration in original); *see also Wharton v. Wise*, 153 U.S. 155, 169 (1894) ("Noscitur a sociis is a rule of construction applicable to all written instruments. Where any particular word is obscure, or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words; and the meaning of a term may be enlarged or restrained by reference to the object of the whole clause in which it is used.")

     Based upon their interpretation of the SPO, the Prodigy Defendants argue in their supplemental supporting memorandum that the text messages in the Subject Lines are confidential because they were sent with an expectation of privacy and, therefore, that they qualify as PI under the SPO. However, when the court applies the canon of *noscitur a sociis* to the relevant language of the SPO, the term "confidential" cannot, as the Prodigy Defendants propose, be considered as a stand-alone basis for designation information as PI under the SPO.[12] Instead, that term must be read in conjunction with the specific items in the list, namely,

---

[12] *Id*.

information that is also "technical, scientific, financial, business, health, or medical information."[13]  Therefore, the court rejects the Prodigy Defendants' argument relying solely upon the alleged confidentiality of the Subject Lines.

In their supplemental reply memorandum, the Prodigy Defendants argue that the Subject Lines qualify as PI even under Vox's interpretation of the SPO.  Specifically, the Prodigy Defendants reiterate their argument concerning the alleged confidentiality of the Subject Lines, and also assert generally that the Subject Lines contain information about Prodigy business matters.  However, the Prodigy Defendants fail to cite to even one of the text messages contained within the Subject Lines to support their argument that the Subject Lines contain business information.  Furthermore, after reviewing each of the relevant Subject Lines, the court sees no basis for any of them to be qualified as Prodigy business information under the SPO.  Thus, even if the court assumes for the sake of argument that the Subject Lines contain confidential information, the court concludes that the Prodigy Defendants have failed to demonstrate that the Subject Lines contain business information under the SPO.  As such, the court concludes that the Prodigy Defendants have failed to carry their burden under the SPO of demonstrating that the Subject Lines qualify as PI.

      **B.**      **The Prodigy Defendants Are Not Entitled to a Protective Order Under Rule 26(c).**

The Prodigy Defendants argue that the court should issue a protective order under Rule 26(c) permitting the CI designations on the Subject Lines to remain in place because: (1) removal of the CI designations will subject them to annoyance and embarrassment; and

---

[13] *Id.*

(2) the CI designations properly prevent Vox from sharing the Subject Lines with law enforcement authorities.

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Under Rule 26(c),

> the party seeking protection has the burden to show good cause for preventing dissemination of discovery materials. The good cause standard requires that the moving party identify any specific prejudice or oppression that will be caused by disclosure. That party must present concrete reasons justifying a protective order and not rest on unverified fears.

*Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 560 (D. Utah 2011) (footnotes omitted).

The Prodigy Defendants fail to meet this standard because: (1) the Prodigy Defendants fail to establish sufficient annoyance or embarrassment; and (2) Vox, as the victim of an alleged crime, cannot be stopped from sharing information with law enforcement authorities. Each reason is explained below and shows that the Prodigy Defendants have failed to establish good cause for the issuance of a protective order concerning the Subject Lines.

### 1. The Prodigy Defendants Have Failed to Demonstrate Sufficient Annoyance or Embarrassment.

The Prodigy Defendants argue that de-designation of the Subject Lines will annoy and embarrass the individual Prodigy Defendants and, therefore, good cause exists for the issuance of a protective order permitting the CI designations to remain in place. That argument fails.

The Prodigy Defendants characterize the Subject Lines as "friendly banter, sometimes competitive cajoling, and often sophomoric conversations amongst close friends and business

associates."[14] The Prodigy Defendants also contend that "[t]he four-letter words, slang, and crude language [were] often used in jest, and is a reflection of the unique and close relationship amongst" the individual Prodigy Defendants.[15] Under that extremely generous characterization of the Subject Lines, the Prodigy Defendants assert that the Subject Lines are "not the type of language that this close-knit group would want advertised to potential customers or the general public."[16] The Prodigy Defendants then contend generally that de-designation of the Subject Lines will cause harm to Prodigy's reputation and goodwill.

    The court acknowledges that some level of annoyance or embarrassment may result to the individual Prodigy Defendants from de-designation of the Subject Lines. However, the court concludes that the Prodigy Defendants have not articulated specific examples of serious annoyance or embarrassment. Instead, they make broad, conclusory allegations about potential annoyance and embarrassment, which will not suffice to justify the issuance of a protective order. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *Pia*, 275 F.R.D. at 561 ("[T]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [discovery materials] is not in and of itself sufficient to establish good cause to support the issuance of protective order.") (quotations and

---

[14] ECF No. 127 at 6-7.

[15] *Id*. at 7.

[16] *Id*.

footnote omitted).  Furthermore, the fact that the individual Prodigy Defendants did not intend for the Subject Lines to be disclosed to the public is not a sufficient reason to justify entry of a protective order; instead, they must demonstrate the potential for serious annoyance or embarrassment, which they have not done.  *Cipollone*, 785 F.2d at 1121 ("[B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.").  Thus, the Prodigy Defendants do not carry their burden to establish good cause under Rule 26(c).

### 2. Vox Should Not Be Prevented From Sharing the Subject Lines With Law Enforcement Authorities.

The Prodigy Defendants argue that there is good cause for the court to issue a protective order permitting the CI designations on the Subject Lines to remain in place because de-designation of the Subject Lines will allow Vox to improperly share them with law enforcement authorities.  That argument likewise fails.

In support of their argument on this point, the Prodigy Defendants rely upon the general proposition that "civil discovery may not be used to subvert limitations on discovery in criminal cases, either by the government or by private parties."  *In re Grand Jury Subpoena*, 646 F.3d 159, 166 (4th Cir. 2011) (quotations and citations omitted).  Although that principle is true, the Prodigy Defendants' reliance upon it is misplaced, which explains why they fail to show how it should be applied in the instant case.

As explained in *In re Grand Jury Subpoena*, that general proposition is applicable only when the civil discovery process is being used by a civil litigant at the direction of law enforcement authorities to do an end-around the government's constitutional obligation to establish probable cause. The *In re Grand Jury Subpoena* court explained:

> Had the government in the present case directed Company 2 to request documents from Company 1 in the Civil Litigation so that the government could then, in turn, subpoena those documents from Company 2, Company 1 would have a basis for arguing that the government had used civil discovery to subvert limitations on discovery in criminal cases. But the district court expressly found that there was no evidence that Company 2 engaged in discovery in the Civil Litigation at the behest of the government. Nor was there any evidence that the United States played any role in securing the documents of [Company 1] to be produced to [Company 2] in the civil litigation.
>
> Company 2's substantial interaction with the government, as detailed above, including Company 2's assistance to the government with the subpoenas and Company 2's updates regarding its civil-discovery progress, do not show that the government was directing Company 2's civil discovery. Rather, the cooperation between the parties reflects the fact that the government and Company 2 were assisting one another in advancing their independent but shared interests. Company 2, after all, has its own interest in redressing, through the civil-litigation process, the injuries that it alleges were caused by Company 1. We therefore see no basis to hold the district court's factual findings clearly erroneous.

*Id*. at 166-67 (quotations and citation omitted) (alterations in original).

In this case, the Prodigy Defendants have not pointed to any evidence that law enforcement is using Vox in the civil discovery process to skirt criminal constitutional norms. Moreover, as a matter of public policy, a court should be loath to preclude an alleged crime victim from providing law enforcement authorities with information about an alleged crime. This is true even when that information is obtained in civil litigation. Thus, the Prodigy Defendants' reliance on *In re Grand Jury Subpoena* is misplaced, and their request for a "good cause" protective order under Rule 26 is denied.

## II. Deposition Exhibits Motion

In this motion, the Prodigy Defendants seek to retain the CI or AEO designations they placed on the Deposition Exhibits. The Deposition Exhibits consist of (A) Exhibits 11, 13, 15, 25, 157, 159, 162, and 164 (collectively, "Email Exhibits");[17] (B) Exhibit 153 ("Invoices Exhibit");[18] and (C) Exhibits 26 and 70 (collectively, "Customer List Exhibits").[19] The court will address the Deposition Exhibits below, grouped together where appropriate.[20] Based upon the following analysis, the court denies the Deposition Exhibits Motion.

### A. Email Exhibits

These exhibits contain email messages among the individual Prodigy Defendants and at least one other employee of Prodigy. The Prodigy Defendants' arguments concerning the Email Exhibits are identical to those they presented in support of the Aptegra Files Motion. For the same reasons set forth above in Section I, the court concludes that the Prodigy Defendants' arguments related to the Email Exhibits are without merit. Accordingly, the CI designations shall be removed from the Email Exhibits.

---

[17] ECF No. 87-2, Exhibits 11, 13, 15, 25, 157, 159, 162, 164.

[18] *Id.*, Exhibit 153.

[19] ECF No. 87-3, Exhibits 26, 70.

[20] In opposing the Prodigy Defendants' motion, Vox also seeks de-designation of Exhibits 30, 150, 151, and 152. However, the Prodigy Defendants have admitted that those exhibits have already been made public and, therefore, that their motion is moot as to those exhibits. Accordingly, the court will not address Exhibits 30, 150, 151, and 152 here. Additionally, while there are some passing references to Exhibit 50 in the parties' written submissions, neither party presents any specific arguments about that exhibit. Consequently, the court will not address Exhibit 50 here.

### B. Invoices Exhibit

This exhibit is a series of invoices from a third party to Prodigy. The Prodigy Defendants argue that this exhibit should retain a CI designation under the SPO. In response, Vox contends that the Invoices Exhibit contains no information that could be considered PI under the SPO that has not already been disclosed in Exhibit 30, which has been made public. Based upon a careful review of the Invoices Exhibit and Exhibit 30, the court agrees with Vox. The court concludes that any additional information that is contained in the Invoices Exhibit could not be considered as PI under the SPO. Accordingly, the court concludes that the Prodigy Defendants' arguments concerning the Invoices Exhibit are without merit and orders that the CI designation on that exhibit be removed.

### C. Customer List Exhibits

The Customer List Exhibits are different versions of the same spreadsheet, which contains a list of Vox customers. The Prodigy Defendants contend that the Customer List Exhibits are properly designated as AEO under the SPO. In response, Vox argues that the designations on the Customer List Exhibits should be downgraded from AEO to CI.

The court agrees with Vox. The court cannot see, and the Prodigy Defendants have not articulated, any legitimate interest for them to have Vox's own customer lists designated as AEO under the SPO. If anything, Vox may have a legitimate interest in protecting that information, which is presumably why it seeks to retain the CI designations on the Customer List Exhibits. Accordingly, the court orders that the designations on the Customer List Exhibits be downgraded from AEO to CI.

## **ORDER**

IT IS HEREBY ORDERED that the Aptegra Motion[21] and the Deposition Exhibits Motion[22] are both DENIED.[23]

IT IS SO ORDERED.

DATED June 24, 2020.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[21] ECF No. 83.

[22] ECF No. 84.

[23] The court notes that neither party requested an award of reasonable expenses in connection with either the Aptegra Files Motion or the Deposition Exhibits Motion. Such awards are permitted under Rule 26(c). Fed. R. Civ. P. 26(c)(3) (providing that any award of reasonable expenses in conjunction with a Rule 26(c) motion is governed by Fed. R. Civ. P. 37(a)(5)); Fed. R. Civ. P. 37(a)(5) (providing standard for an award of reasonable expenses). However, because neither party requested such an award, the court will not reach that issue here.