## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **VOX MARKETING GROUP, LLC, a Utah limited liability company,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **PRODIGY PROMOS L.C., a Utah limited liability company; et al.,** | |
| **Defendants.** | **Case No. 2:18-cv-00632-HCN-JCB** |
| **PRODIGY PROMOS L.C., a Utah limited liability company,** | |
| **Counterclaim Plaintiff,** | |
| **v.** | |
| **VOX MARKETING GROUP, LLC, a Utah limited liability company; et al.,** | **District Judge Howard C. Nielson, Jr.** |
| **Counterclaim Defendants.** | **Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C.

§ 636(b)(1)(A).[1]  Due to Judge Warner's retirement, this case is now referred to Magistrate Judge

Jared C. Bennett.[2]  Before the court are several motions to exclude expert testimony under Fed.

---

[1] ECF Nos. 28, 57.

[2] ECF No. 168.

R. Evid. 702.  The court has carefully reviewed the written memoranda submitted by the parties on the motions.  Under DUCivR 7-1(f), the court has concluded that oral argument is not necessary and, therefore, decides the motions on the written memoranda.

Based upon the following analysis: (1) Defendants Prodigy Promos L.C. ("Prodigy"); Jason Marsh; John Priday; Tyler Fredrickson; Eric Oldson; Spencer Oldson; and Michael Perley's (collectively, "Prodigy Defendants") Motion to Exclude Testimony of Scott Tucker ("Mr. Tucker")[3] is DENIED; (2) the Prodigy Defendants' Motion to Exclude Testimony of Trent Leavitt ("Mr. Leavitt")[4] is DENIED; (3) the Prodigy Defendants' and Defendants Jeffrey Johns; Brooke Johns; and Henhouse Designworks, LLC's (collectively, "Johns Defendants") Motions to Exclude the Expert Testimony of Anthony Vance ("Dr. Vance")[5] are GRANTED IN PART and DENIED IN PART; (4) Plaintiff Vox Marketing Group, LLC's ("Vox") Motion to Exclude Testimony of Expert Witness Orin S. Kerr ("Mr. Kerr")[6] is GRANTED; and (5) Vox's Motion to Exclude Certain Testimony of Expert Witness Dale C. Rowe ("Dr. Rowe")[7] is GRANTED IN PART and DENIED IN PART.

---

[3] ECF No. 171.

[4] ECF No. 175.

[5] ECF No. 177, ECF No. 184.  Because the Johns Defendants' motion concerning Dr. Vance adopts the arguments set forth in the Prodigy Defendants' motion regarding Dr. Vance, the court considers those two motions together.

[6] ECF No. 185.

[7] ECF No. 189.

## BACKGROUND

Vox and Prodigy are competitors in the business of selling promotional products used by companies.  Vox uses an internet-based computer system it created called the Vox Tools Site to make proposals to clients, process purchase orders, and invoice clients.  Vox filed this lawsuit in state court based upon the Prodigy Defendants' alleged unauthorized access of the Vox Tools Site.[8]  In the operative complaint, Vox asserts causes of action against the Prodigy Defendants and the Johns Defendants for violations of the Utah Uniform Trade Secrets Act, violations of the Computer Fraud and Abuse Act, tortious interference with economic relations, and pattern of unlawful activity.  Prodigy counterclaims against Vox and certain of its employees, Christopher S. Rollins, Shane Brady, Alex Wolfe, and Aaron Scott (collectively, "Vox Parties"), for breach of contract, defamation/libel, interference with economic relations, trespass to chattels, negligence, and abuse of process.

At the same time Vox filed suit in state court, it moved for a temporary restraining order, preliminary injunction, and prejudgment writ of replevin.  The state court granted Vox's motion and entered a temporary restraining order, along with a prejudgment writ of replevin.  The writ of replevin directed the Utah County Sheriff to take custody of all electronic storage devices located at Prodigy's place of business ("Devices") and make the Devices available to Decipher Forensics, LLC ("Decipher").  Utah County Sheriff Deputies executed the writ and made the Devices available to Decipher personnel, including Mr. Leavitt.  Mr. Leavitt and a Decipher colleague then made forensic mirror image files of each of the Devices ("Mirror Images").

---

[8] This action was removed to this court on August 10, 2018.  ECF No. 2.

After Decipher created the Mirror Images, Vox obtained a court order from the state court requiring the Prodigy Defendants to produce the passwords and other authentication credentials for the Devices to a third party, Aptegra Consulting, LLC ("Aptegra").  The state court ordered Aptegra to search the Mirror Images and provide the results of its search to Prodigy's counsel.  Aptegra conducted the search through its principal, Mr. Tucker.  As part of his duties, Mr. Tucker created a description of certain Devices that identifies which of the Prodigy Defendants are, according to Mr. Tucker, users of certain Devices ("Decipher Descriptions").

After discovery was complete, the Prodigy Defendants and the Johns Defendants moved for summary judgment on Vox's claims, and the Vox Parties moved for summary judgment on Prodigy's counterclaims.  Along with those motions, the parties have filed the motions to exclude now before the court.  Following an explanation of the legal principles that govern the court's analysis of those motions, the court discusses the parties' motions.

## LEGAL BACKGROUND

Expert testimony frequently is a crucial part of establishing a claim or defense.  However, to provide testimony, an expert must be "qualified,"[9] and his or her testimony must rest "on a reliable foundation" that "is relevant to the task at hand."[10]  Rule 702 allows an expert "by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if:

---

[9] Fed. R. Evid. 702.

[10] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[11]

The Advisory Committee notes accompanying the 2000 amendments to Rule 702 expound upon factors the court should consider to the extent applicable and provide extensive guidance for assessing reliability.[12]  Specifically, this commentary provides that proponents of expert testimony bear the burden of establishing its admissibility but

> do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are *reliable* [because] [t]he evidentiary requirement of reliability is lower than the merits standard of correctness.[13]

Because "reliability" instead of "correctness" is the standard for assessing expert testimony under Rule 702, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky

---

[11] Fed. R. Evid. 702(a)-(d).

[12] Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

[13] *Id.* (emphasis added) (quotations and citations omitted).

but admissible evidence.'"[14]  Thus, under Rule 702, the question is not whether the proposed

expert testimony is correct or even shaky; it is whether the testimony is reliable or unreliable.



*Although reliable, admissible only if other Federal Rules of Evidence are satisfied.

     If the court determines that the proffered expert testimony is "unreliable," then it is

inadmissible.  However, if the court deems the expert testimony "reliable," then the expert

testimony is subjected to the other requirements in the Federal Rules of Evidence to determine

admissibility.[15]  Once the reliable expert evidence is deemed admissible under the other Federal

Rules of Evidence, the fact finder is free to assess where along the weight spectrum of "correct"

---

[14] *Id.* (quoting *Daubert*, 509 U.S. at 595).

[15] Even if an expert's testimony is deemed "reliable" under Rule 702, a subsequent legal ruling from the court can render the expert's testimony irrelevant under Fed. R. Evid. 403.  For example, if the court ruled as a matter of law that damages were limited to a shorter period than an expert calculated, a party would be able to move under Rule 403 to exclude the portion of the expert opinion that conflicts with the court's legal ruling on the grounds that the conflicting opinion confuses the issues and is unduly prejudicial.  Additionally, even if the expert's report is "reliable," it would likely be excluded from evidence as hearsay under Fed. R. Evid. 802.  Thus, "reliable evidence" does not necessarily equal "admissible evidence" whereas "unreliable evidence" necessarily equals "inadmissible evidence."

and "reliable" the expert evidence falls.  Even though expert evidence may be reliable and otherwise admissible, a fact finder may find it so shaky that it warrants little to no weight.

However, as shown in the visual aid above, the court's focus in deciding Rule 702 motions is narrow because instead of assessing whether the fact finder will give the expert evidence any weight, the court focuses solely on which side of the "Reliable/Unreliable" line the expert evidence falls.  In making this determination, the court relies on the factors stated in Rule 702, the additional factors contained in the 2000 Advisory Committee's note, and the court's broad discretion.[16]

Besides providing what a court may consider in determining the narrow question of "Reliability/Unreliability," the Advisory Committee's note to the 2000 amendments also states what a court cannot consider.  Specifically,

> [w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts.  The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.[17]

Consequently, if determining "reliability" requires the court to decide which party's facts are more believable, then the court cannot exclude the expert but must leave it to the fact finder to

---

[16] Fed. R. Evid. 702 advisory committee's note to 2000 amendment (providing additional factors a court may consider, among others, in determining reliability of expert testimony); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (stating that courts are given "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination" (emphasis omitted)).

[17] Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

determine the facts and how much weight to afford the expert's testimony based on that factual determination.

Relatedly, when expert opinion is based on the parties' competing views of the law, motions to exclude expert testimony under Rule 702 are not the appropriate medium for resolving these legal disputes; that is what summary judgment and trial are for.[18]  Indeed, not one of the factors for determining "reliability" listed in Rule 702 includes an evaluation of the parties' underlying legal arguments.  Besides not being textually supported under Rule 702, the court cannot include the validity of the parties' legal arguments in determining reliability as a practical matter.  By illustration, assume that two opposing experts' analyses are based on differing legal interpretations of the same contract.  Further assume that the court rules as a matter of law that a plaintiff's interpretation of the contract is correct.  Although both expert's opinions may be "reliable" under Rule 702 based on the rules of the experts' professional discipline, the opinion of the plaintiff's expert would be well taken, whereas the opinion of the defendant's expert would be subject to exclusion as irrelevant under Rule 403.  But if the court were to reach the opposite legal conclusion, then the opposite result would occur relating to the experts' opinions.  Notice that the exclusion of one expert's opinion does not turn on whether the expert's opinion was "reliable" (*i.e.*, whether the expert was qualified, applied the proper

---

[18] *Wells Fargo Bank, N.A. v. Stewart Title Guar. Co.*, No. 19-CV-285, 2020 WL 6451963, *3 (D. Utah. Nov. 3, 2020) (stating that "the court will not entertain summary judgment-esque arguments disguised as Daubert objections" (citing *Okla. ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 896 (10th Cir. 2013); *Sabal Trail Transmission, LLC v. 0.589 Acres of Land in Hamilton Cty, Fla.*, No. 16-CV-277-JJ-BT, 2018 WL 3655556, at *7 (M.D. Fla. Aug. 2, 2018); *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *3 (S.D. Ala. Sept. 21, 2016))).

methods of his discipline, or reached a sound conclusion, among other things).  Instead, exclusion turns on relevance stemming from the court's legal ruling, which may be a central issue in the entire lawsuit.  Thus, the court will not decide the validity of the parties' genuinely disputed legal contentions when deciding whether expert evidence is "reliable" under Rule 702.

## ANALYSIS

### I.     The Prodigy Defendants' Motion to Exclude Mr. Tucker's Testimony Is Denied.

The Prodigy Defendants argue that certain portions of Mr. Tucker's testimony should be excluded.  Specifically, the Prodigy Defendants contend that Mr. Tucker should not be permitted to testify that: (A) the Prodigy Defendants are custodians of certain Devices; (B) the Prodigy Defendants are users of certain Devices because he did not produce the Decipher Descriptions with his expert report; (C) certain screenshots he took are authentic; and (D) certain emails are authentic.  The court addresses each of those contentions below and finds them all unpersuasive. Therefore, the court denies the Prodigy Defendants' motion.

### A.     Mr. Tucker May Testify About Custodianship of the Devices.

Mr. Tucker's expert report makes references to some of the Prodigy Defendants being custodians of certain Devices.  However, in his deposition, Mr. Tucker indicated that he did not intend to testify about physical custodianship of the Devices.  Based upon that indication, the Prodigy Defendants contend that Mr. Tucker should not be allowed to offer any testimony on the issue of custodianship.  Vox responds by confirming that Mr. Tucker will not testify about physical custodianship of the Devices.  Instead, Vox contends, Mr. Tucker is expected to testify

about which of the Prodigy Defendants "the data showed was the user of the device and the custodian of the data contained thereon."[19]

The court is not persuaded by the Prodigy Defendants' argument.  The fact that Mr. Tucker has indicated that he will not testify about physical custodianship does not preclude him from testifying about custodianship in any way.  Importantly, although Mr. Tucker makes references to custodianship in his report, he does not provide an opinion about whether the Prodigy Defendants are custodians of the Devices.  Instead, Mr. Tucker testified that he based his references to custodianship on Mr. Leavitt's opinions.  Mr. Tucker's reliance upon Mr. Leavitt's opinions is permissible because, "as a general matter, there is nothing objectionable about an expert relying upon the work a colleague."[20]  Indeed, "[s]uch a scenario is explicitly contemplated by the Rules of Evidence."[21]  Specifically, Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed."[22]  Although "[a]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert,"[23] the expert may rely upon another

---

[19] ECF No. 226 at 5.

[20] *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (citing *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015) ("For areas outside her expertise . . . the district court properly concluded that [the expert] could, indeed must, rely upon . . . other experts having such industry-specific experience."); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert . . . .")).

[21] *Id.* (citing Fed. R. Evid. 703).

[22] Fed. R. Evid. 703 (emphasis added).

[23] *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010).

expert's opinion if "the facts or data relied upon [are of] the kind that 'experts in the particular field would reasonably rely on . . . in forming an opinion on the subject.'"[24]

Here, the Prodigy Defendants' have not shown that Mr. Tucker's reliance upon Mr. Leavitt's opinions concerning custody was improper or rendered Mr. Tucker's testimony unreliable. The Prodigy Defendants' only argument concerning the permissibility of Mr. Tucker's reliance upon Mr. Leavitt's opinions is based upon the success of their motion to exclude Mr. Leavitt's opinions. That argument necessarily fails because, as will be demonstrated below, the Prodigy Defendants' challenge to Mr. Leavitt's opinions likewise fails. Additionally, the Prodigy Defendants have not argued that Mr. Tucker relied upon Mr. Leavitt's opinions based only upon the fact that Mr. Leavitt is an expert. For those reasons, the Prodigy Defendants' challenge to Mr. Tucker's testimony fails.

**B.  Mr. Tucker Disclosed the Data Used in Forming His Opinions About Users of the Devices.**

The Prodigy Defendants argue that Mr. Tucker should not be allowed to testify about the Prodigy Defendants being users of certain Devices because he did not produce the Decipher Descriptions with his expert report. That argument fails because the Prodigy Defendants fail to demonstrate a violation of Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(B) requires Mr. Tucker to produce a report. That report must include, among other things, "the facts or data" Mr. Tucker considered in forming his opinions.[25] The Advisory Committee explains that "'facts or data' is

---

[24] *Gopalratnam*, 877 F.3d at 789 (second alteration in original) (quoting Fed. R. Evid. 703).

[25] Fed. R. Civ. P. 2(a)(2)(B)(ii).

meant to limit disclosure to material of a factual nature."[26]  The Committee further states that "'facts or data' [are to] be interpreted broadly to require disclosure of any material considered by the expert . . . that contains factual ingredients.  The disclosure obligation extends to any facts or data 'considered' by the expert . . . ."[27]  Although Mr. Tucker's report must *disclose* the facts or data he considered, Rule 26 does not require him to *produce* the documents containing that factual material lest his report become so large and cumbersome that it is rendered useless.

By illustration, assume that Mr. Tucker considered 5,000 pages of spreadsheets in reaching his opinion.  Rule 26(a)(2)(B)(ii) does not require him to produce (*i.e.*, attach) those 5,000 spreadsheet pages to his report; it only requires him to disclose in the report that he obtained facts and data from company spreadsheets.  If Mr. Tucker were to rely on any of the spreadsheet pages as a supporting exhibit to his report, Rule 26 requires him to attach those exhibits to the report.[28]  However, Rule 26 does not require that he automatically produce all documents that he considered.  If the Prodigy Defendants want all the documents that Mr. Tucker considered, then they could have relied upon Fed. R. Civ. P. 45, among other mechanisms, to obtain them.

The Prodigy Defendants incorrectly assume that Mr. Tucker was required to produce the Decipher Descriptions along with his expert report to comply with Rule 26(a)(2).  However, they

---

[26] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment subdivision (a)(2)(B).

[27] *Id.*

[28] Fed. R. Civ. P. 2(a)(2)(B)(iii).

fail to show any "facts or data" that Mr. Tucker failed to disclose in his report.[29]  Therefore, the Prodigy Defendants fail to show any violation of Rule 26(a)(2).  Consequently, the court rejects this challenge to Mr. Tucker's testimony.

### C.      Mr. Tucker May Testify About the Authenticity of the Screenshots.

The Prodigy Defendants argue that Mr. Tucker should not be permitted to testify about the authenticity of certain screenshots he took because Mr. Tucker is not qualified to take screenshots and because screenshotting is not a reliable method that Mr. Tucker reliably applied. Because the Prodigy Defendants have not shown that screenshotting requires some type of special "method" under Rule 702, that argument fails.

In forming his opinions, Mr. Tucker used his expertise to mount certain computer images as virtual machines, run the operating systems, and find images that he determined were worthy of a screenshot.  The screenshots were simply a representation of what he saw during his review. The court is not persuaded that the routine task of taking screenshots required Mr. Tucker to employ a special "method."  Indeed, if the Prodigy Defendants' argument were taken to its logical extreme, an expert's report could be challenged under Rule 702 if the expert used a word processing program to record his or her findings without providing some sort of special "method" for doing so.  Put simply, the Prodigy Defendants' challenge concerning screenshots does not implicate Rule 702 and, therefore, must fail.

---

[29] Importantly, the Prodigy Defendants do not dispute that the Decipher Descriptions were provided to them by way of Mr. Leavitt's expert report.

### D.      Mr. Tucker May Testify About the Authenticity of the Emails.

In rendering his opinions, Mr. Tucker compared certain original email files with files from the Mirror Images.  The Prodigy Defendants contend that Mr. Tucker should not be allowed to testify that certain of the emails are authentic because he is not qualified and did not use any expertise to compare the original email files to the files from the Mirror Images.[30]  Those arguments are meritless.

As with the Prodigy Defendants' previous argument, they have not demonstrated that Rule 702 applies to Mr. Tucker's testimony about the emails.  Fed. R. Evid. 901 recognizes that nonexperts, experts, and even the finder of fact at trial can authenticate documents through comparison.[31]  That is exactly what Mr. Tucker did with the emails.  Rule 702 does not require an expert to use a complex or special "method" to do what a person with a pair of functioning eyes and literacy skills can do.  Mr. Tucker's comparison was within the scope of rendering an expert opinion even if he employed uncomplicated means in reaching that opinion.  For those reasons, the Prodigy Defendants' challenge to Mr. Tucker's testimony about the emails fails.

## II.    The Prodigy Defendants' Motion to Exclude Mr. Leavitt's Testimony Is Denied.

The Prodigy Defendants assert that Mr. Leavitt should not be permitted to testify that the copies of the Devices are forensically sound or that he has identified the primary users and/or custodians of the Devices.  The Prodigy Defendants' primary challenge to Mr. Leavitt's

---

[30] The Prodigy Defendants also argue that Mr. Tucker's testimony on this topic should be excluded because he did not produce the original email files with his expert report.  For the reasons explained in Section I.B. above, the court rejects that argument.

[31] Fed. R. Evid. 901(b)(2)-(3).

testimony is that he did not keep an adequate chain of custody for the Devices.[32]  For the

following reasons, that argument is without merit and, consequently, the court denies the Prodigy

Defendants' motion.

The Prodigy Defendants' argument concerning any defects in the chain of custody for the

Devices does not provide a basis for determining that Mr. Leavitt's testimony is inadmissible.

> [T]he chain of custody need not be perfect for the evidence to be
> admissible.  Where the chain of custody is imperfect, deficiencies
> . . . go to the weight of the evidence, not its admissibility; once
> admitted, the jury evaluates the defects and, based on its evaluation,
> may accept or disregard the evidence.[33]

That principle holds true when considering whether expert testimony is admissible under Rule

702.[34]  Furthermore, when faced with a chain-of-custody challenge regarding computer data

---

[32] Although it has no bearing on the court's ruling on this motion, the Prodigy Defendants also challenge the reliability of Table 1 attached to Mr. Leavitt's report, which contains his inventory of the Devices.  One of the Prodigy Defendants' arguments supporting that challenge is that Mr. Leavitt did not know how Table 1 was created.  However, the relevant portions of Mr. Leavitt's deposition testimony that the Prodigy Defendants cite simply do not support that argument.  Mr. Leavitt clearly testified that Table 1 was prepared by one of his colleagues and that he witnessed its preparation.

[33] *United States v. Yeley-Davis*, 632 F.3d 673, 683 (10th Cir. 2011) (alterations in original) (quotations and citations omitted); *see also United States v. Wrensford*, No. CR 2013-0003, 2014 WL 1224657, at *8 (D.V.I. Mar. 25, 2014) ("[T]he Third Circuit has long rejected the proposition that evidence may only be admitted if a complete and exclusive chain of custody is established. [I]n the ordinary case gaps in the chain go to the weight of the evidence, not its admissibility." (second alteration in original) (quotations and citations omitted)).

[34] *United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005) (rejecting the defendant's chain-cv-custody argument under Rule 702 and *Daubert* and providing that "[a] perfect chain of custody is not a prerequisite to admission, as gaps in the chain normally go to the weight of the evidence rather than its admissibility" (alteration in original) (quotations and citations omitted)); *United States v. Perocier*, 269 F.R.D. 103, 108 (D.P.R. 2009) ("Challenges to the chain of custody of the underlying data on which expert testimony is based go to the weight, not the admissibility, of the testimony.").

underlying an expert's testimony, the proponent of the testimony need not prove that there was no chance of tampering with or altering the data to establish reliability.[35]

Under the numerous foregoing authorities, the court rejects the Prodigy Defendants' chain-of-custody arguments, which clearly go to weight of the evidence and not its admissibility. Additionally, and even though the Prodigy Defendants fail to present any evidence that the data from the Devices was altered, to the extent they suggest that there was a possibility that alteration occurred because of an allegedly imperfect chain of custody for the Devices, that argument likewise goes to weight rather than admissibility. The Prodigy Defendants certainly may vigorously cross-examine Mr. Leavitt on these issues, and the jury will determine the weight to assign to any points made on that cross-examination, but the Prodigy Defendants' chain-of-custody arguments do not establish that Mr. Leavitt's testimony is unreliable. For those reasons, the court denies the Prodigy Defendants' motion to exclude Mr. Leavitt's testimony.

## III.   The Prodigy Defendants' and the Johns Defendants' Motions to Exclude Dr. Vance's Testimony Is Granted in Part and Denied in Part.

The Prodigy Defendants and the Johns Defendants contend that certain portions of Dr. Vance's testimony should be excluded because: (A) portions of Dr. Vance's opinions offer legal analysis and conclusions; (B) Dr. Vance did not conduct an independent investigation of certain facts underlying his opinions; (C) Dr. Vance ignored contrary evidence in forming his opinions;

---

[35] *Perocier*, 269 F.R.D. at 107 ("As to computer data in particular, courts have long held that '[t]he fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness.'" (alteration in original) (quoting *United States v. Bonallo*, 858 F.2d 1427, 1436 (9th Cir. 1988)); *see also Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 169 (D.N.J. 2008) (rejecting challenge to an expert's testimony "based on the possibility that the underlying data could be altered" where there was "not a shred of evidence to indicate the files were in any way manipulated").

and (D) Dr. Vance changed his methodology in his rebuttal report.[36]  The court addresses each of those arguments below.  As shown below, the Prodigy Defendants' and the Johns Defendants' first argument succeeds, while their final three arguments do not.  Therefore, the Prodigy Defendants' and the Johns Defendants' motions are granted in part and denied in part.

A.      **The Portions of Dr. Vance's Opinions That Offer Legal Analysis and Conclusions Are Excluded Because They Are Unhelpful to the Fact Finder.**

Because Dr. Vance's expert report offers opinions that draw legal conclusions on terms contained in the statutes underlying some of the claims in this action, those opinions must be excluded because they are unhelpful to the trier of fact.  To be "reliable" under Rule 702, an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue."[37]  Because an expert's job is to help the *fact* finder understand and determine the *facts*, courts routinely exclude expert opinions that merely provide legal analysis because, after all, legal analysis is the court's job.[38]  Indeed, as the Advisory Committee note to Fed. R. Evid. 704 provides, courts "stand ready to exclude opinions phrased in terms of inadequately explored legal

---

[36] The Prodigy Defendants and the Johns Defendants argue that Dr. Vance's opinions should be excluded because he did not produce with his expert report all of the documents and data he relied upon in forming his opinions.  Again, for the reasons explained in Section I.B. above, that argument fails.

[37] Fed. R. Evid. 702(a).

[38] *See, e.g.*, *United States v. Brooks*, No. 06-CR-550(S-1) (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) (stating that "courts specifically preclude the expert from offering either legal conclusions or opinions that apply corporate governance concepts to the case's specific facts"); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364 (D. Del. 2006) (noting that experts may not testify regarding the substance of patent and contract law); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044 (D. Ariz. 2005) (holding that law professor's expert testimony regarding Maine law on "piercing the corporate veil" was an inadmissible legal opinion).

criteria."[39]  Consequently, the Court of Appeals for the Tenth Circuit has stated that "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."[40]

By illustration, if an attorney in a trial over a contested will asks an expert, "Did the testator have the capacity to make a will?" then the answer to that question will be improper under Rule 702 because the expert would state a legal conclusion by applying the law to the facts.  However, if the attorney asks an expert, "Based on your mental health evaluation of the testator, was she able to remember the nature and extent of her property?" then the expert will opine on facts to assist the trier of fact understand the evidence.  The attorney could continue to ask questions about the expert's factual observations and opinions to elicit the necessary evidence to argue that the facts support the legal conclusions for which the attorney advocates.[41]

Dr. Vance cannot opine about the meaning of certain terms in the relevant statutes or about whether any of the elements of those statutes are satisfied because such testimony would merely provide a legal conclusion drawn by applying the facts to the statutory terms in question. However, Dr. Vance may testify regarding facts that are relevant to those issues that are within his expertise.  For example, although Dr. Vance cannot render a legal conclusion that the Prodigy Defendants' access to the Vox Tools Site was "unauthorized," he may testify as to facts about

---

[39] Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules.

[40] *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

[41] *See* David H. Kaye, David E. Bernstein, Andrew G. Ferguson, Maggie Wittlin, and Jennifer L. Mnookin, *The New Wigmore: Expert Evidence* § 2.3 (Aspen 3d ed. 2021); *cf. Okland Oil*, 144 F.3d at 1327-28 (recognizing that expert opinion relating to facts that allow attorneys to argue in favor of a legal conclusion based on the expert testimony is proper).

Defendants' access and facts concerning the Vox Tools Site.  Such testimony is proper because it permits the fact finder to decide whether the evidence does or does no support the legal conclusion about whether the access was "unauthorized."  For those reasons, this portion of the Prodigy Defendants' and the Johns Defendants' motions are granted in part and denied in part.

### B.   Dr. Vance's Failure to Conduct an Independent Investigation of Certain Facts Does Not Render His Opinions Unreliable.

The Prodigy Defendants and the Johns Defendants contend that Dr. Vance's failure to verify certain facts he obtained from Vox and Vox's counsel renders his opinions unreliable.  However,

> [a]n expert opinion is not per se unreliable because it relies upon some unverified or inaccurate information provided by the expert's client.  Rather, if a party provides its expert with a piece of false information or withheld relevant data, [the opposing party] can cross-examine the experts on this matter, calling into question the weight that the jury should accord their testimony.[42]

Thus, the mere fact that Dr. Vance relied upon information given to him by Vox and Vox's counsel does not automatically render his opinions unreliable.  Instead, that issue is the proper subject of cross-examination and goes to weight, not admissibility.  Therefore, the court denies this portion of the Prodigy Defendants' and the Johns Defendants' motions.

### C.   Dr. Vance Did Not Ignore Contrary Evidence in Forming His Opinions.

Although the Prodigy Defendants and the Johns Defendants contend that Dr. Vance ignored contrary evidence in forming his opinions, they effectively argue that the facts Dr. Vance

---

[42] *Ellis v. Hobbs Police Dep't*, No. 217-cv-01011 KWR/GBW, 2020 WL 3618958, at *4 (D.N.M. July 2, 2020) (second alteration in original) (quotations and citations omitted); *see also* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed." (emphasis added)).

relied upon are incorrect.  As the court explained above, that is not a proper basis for a Rule 702 motion.  In determining reliability, the court will not decide between the parties' competing versions of the facts underlying Dr. Vance's opinion.[43]  Instead, it is the fact finder's province to consider the parties' competing versions and determine how much weight to afford Dr. Vance's opinions based on that consideration.  Accordingly, this portion of the Prodigy Defendants' and the Johns Defendants' motions are denied.

### D.      Dr. Vance Did Not Change His Methodology in His Rebuttal Report.

The Prodigy Defendants and the Johns Defendants assert that Dr. Vance changed his methodology in his rebuttal report.  Under Rule 26, rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party."[44]  That is precisely what Dr. Vance did in his rebuttal report.  Dr. Rowe's report stated that there was no digital evidence that certain features of the Vox Tools Site existed at any time prior to 2018.  In his rebuttal report, Dr. Vance simply documented digital evidence to demonstrate that those features existed in 2016.  Thus, Dr. Vance did not change his methodology in his rebuttal report; instead, he simply refuted opinions on subject matter contained in Dr. Rowe's affirmative expert report.  Accordingly, the court denies this portion of the Prodigy Defendants' and the Johns Defendants' motions.

---

[43] Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

[44] Fed. R. Civ. P. 26(a)(2)(D)(ii).

**IV.   Vox's Motion to Exclude Mr. Kerr's Testimony Is Granted in Part and Denied in Part.**

Mr. Kerr's report was served as a rebuttal report to the affirmative report of Dr. Vance.  In his report, Mr. Kerr, like Dr. Vance, opines about the law by applying facts to statutory requirements and then opines whether the statutory requirements have been met.  For the same reasons set forth in Section III.A. above, Mr. Kerr may not offer those opinions because they are unhelpful to the fact finder.  As with Dr. Vance, Mr. Kerr cannot testify about the meaning of certain terms in the relevant statutes or about whether any of the elements of those statutes are satisfied.  Again, any such testimony would do nothing more than usurp the role of the court, which is inappropriate.  Unlike Dr. Vance's testimony, however, the court does not see a factual component to Mr. Kerr's testimony at which he arrived through any computing expertise.  Instead, Mr. Kerr's report simply opines on the law and criticizes Mr. Vance for doing the same.  Under Rule 702, this line of argument (for it is not expert testimony) is unhelpful to the fact finder.  For those reasons, Vox's motion as to Mr. Kerr is granted.

**V.   Vox's Motion to Exclude Dr. Rowe's Testimony Is Granted in Part and Denied in Part.**

Vox contends that Dr. Rowe should not be permitted to testify on the following topics: (A) the authenticity of the Mirror Images, the authenticity of the browser history and text messages spreadsheets extracted from the Mirror Images, the authenticity of the data in the combined browser history and text message spreadsheets created and relied upon by Dr. Vance, and whether the data in Dr. Vance's spreadsheets are properly tied to the individual Prodigy Defendants; (B) chain-of-custody issues; (C) whether the authentication code for Vox Control Login feature existed at any time prior to 2018; (D) Figure 4.1 or Table 4.1 contained in his

report and whether access to the Vox Tools Site by unauthorized third parties was commonplace; and (E) whether Vox knew that the Vox Control Login feature was disabled.[45]

### A.   The Prodigy Defendants and the Johns Defendants Concede That Dr. Rowe Will Not Testify About Certain Topics.

Vox contends that Dr. Rowe should not be permitted to testify about the authenticity of the Mirror Images, the authenticity of the browser history and text messages spreadsheets extracted from the Mirror Images, the authenticity of the data in the combined browser history and text message spreadsheets created and relied upon by Dr. Vance, and whether the data in Dr. Vance's spreadsheets are properly tied to the individual Prodigy Defendants.  The Prodigy Defendants and the Johns Defendants concede that Dr. Rowe will not testify about any of those topics.  Accordingly, the court grants this portion of Vox's motion.  Dr. Rowe will not be allowed to testify as to any of those topics.[46]

---

[45] Vox also contends that Dr. Rowe should not be allowed to offer opinions that amount to legal conclusions.  However, Vox has not specifically identified any portions of Dr. Rowe's report that contain such opinions.  Nevertheless, for the reasons set forth in Section III.A. above, to the extent Dr. Rowe expresses any opinions on legal issues, he is precluded from testifying about those issues.

[46] With respect to whether the data in Dr. Vance's spreadsheets are properly tied to the individual Prodigy Defendants, Dr. Rowe specifically testified in his deposition that he did not have an opinion about whether they are.  Consistent with that testimony, the Prodigy Defendants and the Johns Defendants admit that they have not disclosed in Dr. Rowe's report that he intends to offer an opinion on that topic.  Nevertheless, they assert that if Vox asks Dr. Rowe about that topic, as he apparently was during his deposition, Dr. Rowe should be permitted to state his opinion.  Given that Dr. Rowe has already testified that he does not have such an opinion, that argument is perplexing.  Nevertheless, in light of Dr. Rowe's clear deposition testimony, he will not be permitted to testify on that topic.

**B.      Dr. Rowe May Testify About Chain-of-Custody Issues.**

Vox asserts that Dr. Rowe should not be permitted to testify about whether Decipher's collection of imagining data complied with the industry chain-of-custody standards for forensic computer discipline.  At its base, Vox's challenge to Dr. Rowe's testimony is grounded on Dr. Rowe's disagreement with Vox's version of the facts regarding whether there was a proper chain of custody.  Vox contends that it presented chain-of-custody evidence in the form of Dr. Vance's rebuttal report.  The fact that Dr. Rowe disagrees that Vox's evidence provides a proper chain of custody is neither surprising nor a basis for determining that his opinion is unreliable.  Indeed, Rule 702 does not permit the court to choose which parties' disputed facts or legal analysis it prefers to decide a motion to exclude an expert's testimony.[47]  Moreover, as amply shown above, the contentions over chain of custody go to weight and not to admissibility.  Therefore, both parties are free to present evidence showing that the imagining protocols that Decipher used either did or did not comply with the professional standards for imaging electronics.  The parties are also entitled to vigorously cross-examine each expert's view of proper chain of custody protocols for the scientific discipline of forensic computing.  But, the parties are not free to exclude each other's evidence as to whether industry standards regarding the chain of custody were or were not followed.  Accordingly, this portion of Vox's motion is denied.

**C.      Dr. Rowe Cannot Testify That the Authentication Code for Vox Control Login Feature Did Not Exist at Any Time Prior to 2018.**

Vox argues that Dr. Rowe should not be permitted to testify that the authentication code for Vox Control Login feature did not exist at any time prior to 2018.  Vox contends that Dr.

---

[47] Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Rowe's opinion on this subject is not "based on sufficient facts or data"[48] because he admitted in his deposition that there was evidence contained in Dr. Vance's rebuttal report indicating that the Vox Control Login feature existed in 2016.  Therefore, Vox argues, Dr. Rowe's testimony on this topic should be excluded.  The Prodigy Defendants and the Johns Defendants respond by arguing that Dr. Rowe did not make that admission during his deposition and that Vox has failed to produce any digital evidence indicating that the Vox Control Login feature existed in 2016.

In his expert report, Dr. Rowe opined that there is no digital evidence indicating that the Vox Control Login feature did not exist at any time prior to 2018.  However, during his deposition, Dr. Rowe was shown Appendix B to Dr. Vance's rebuttal report, and Dr. Rowe acknowledged that he had read that appendix.  Dr. Rowe further acknowledged that Appendix B identifies the source code files for the Vox Control Login feature and that those files include date stamps in 2016.  Although Dr. Rowe indicated that he had not reviewed the actual digital files in Appendix B, he agreed that Appendix B suggested that the Vox Control Login feature did exist in 2016.  Additionally, Vox has demonstrated that it did provide the digital files related to the Vox Control Login feature to the Prodigy Defendants and the Johns Defendants with Dr. Vance's rebuttal expert report.

Based upon Dr. Rowe's admission, and the fact that the relevant digital files were in fact produced but apparently not reviewed by Dr. Rowe, Dr. Rowe's opinion that the Vox Control Login feature did not exist at any time prior to 2018 is not "based on sufficient facts or data."[49]

---

[48] Fed. R. Evid. 702(b).

[49] *Id*.

To hold otherwise would be to allow testimony contrary to the undisputed facts.  Furthermore, because the basis of that opinion is not grounded in sufficient facts or data, it will not "help the trier of fact to understand the evidence or to determine a fact in issue."[50]  Consequently, Dr. Rowe's opinion on this topic is not reliable.  Therefore, this portion of Vox's motion is granted. Dr. Rowe cannot testify that the Vox Control Login feature did not exist at any time prior to 2018.

### D.    Dr. Rowe Cannot Testify About Figure 4.1 or Table 4.1 or Testify That Access to the Vox Tools Site by Unauthorized Third Parties Was Commonplace.

Vox contends that Dr. Rowe should not be permitted to testify about Figure 4.1 or Table 4.1 contained in his expert report or testify that access to the Vox Tools Site by unauthorized third parties was commonplace.  Dr. Rowe opines that Figure 4.1 and Table 4.1 demonstrate that of all the "events" resulting from visits to the Vox Tools Site, only 1% came from Prodigy headquarters, 0% came from Prodigy-related IP addresses other than Prodigy headquarters, 28% came from anonymous external IP addresses, and 71% came from Vox IP addresses.  Based upon that opinion, Dr. Rowe further opines that many "events" associated with the Vox Tools Site are triggered by anonymous external IP addresses and, therefore, that the Vox Tools Site was open to the public, and the Prodigy Defendants' accesses to Vox confidential information were authorized.

However, during his deposition, Dr. Rowe admitted that the "events" referenced in his report do not represent accesses of the pages that contain the Vox confidential information that is the subject of this action.  Dr. Rowe also admitted that Figure 4.1 and Table 4.1 do not account

---

[50] Fed. R. Evid. 702(a).

for additional IP addresses he now believes to be Prodigy-affiliated IP addresses.  Dr. Rowe further admitted that Figure 4.1 is not complete because he does not have enough data.  Finally, Dr. Rowe conceded that he could not conclude that access to the site was commonplace without doing further analysis.

Based upon that deposition testimony, Dr. Rowe's opinions on these issues are not "based on sufficient facts or data" and, therefore, will not "help the trier of fact to understand the evidence or to determine a fact in issue."[51]  Consequently, Dr. Rowe's opinions on this topic must be excluded because they are unreliable.  Therefore, the court grants this portion of Vox's motion.  Dr. Rowe cannot testify about Figure 4.1 or Table 4.1 or testify that access to the Vox Tools Site by unauthorized third parties was commonplace.

### E.    Dr. Rowe Cannot Testify That Vox Knew the Vox Control Login Feature Was Disabled.

Vox contends that Dr. Rowe should not be permitted to testify that Vox knew the Control Login feature was disabled.  When asked about this issue during his deposition, Dr. Rowe presented testimony indicating that the Chief Operating Officer of Vox may have known that the Control Login feature had been disabled.  After offering that testimony, Dr. Rowe specifically stated that he had nothing to base his testimony on other than deposition statements from Dr. Vance and Vox's Chief Operating Officer.

Dr. Rowe's testimony on this point fails to satisfy any of the requirements of Rule 702. Indeed, his testimony is neither based on any "scientific, technical, or other specialized

---

[51] Fed. R. Evid. 702(a)-(b).

knowledge," nor "on sufficient facts or data";[52] it is based on rank speculation.  Speculation is

the epitome of unreliable under Rule 702.[53]  Therefore, the court grants this portion of Vox's

motion.  Dr. Rowe cannot testify that Vox knew the Control Login feature was disabled.

### <u>ORDER</u>

Based upon the foregoing analysis, IT IS HEREBY ORDERED:

1.    The Prodigy Defendants' motion to exclude Mr. Tucker's testimony[54] is DENIED.

2.    The Prodigy Defendants' motion to exclude Mr. Leavitt's testimony[55] is DENIED.

3.    The Prodigy Defendants' and the Johns Defendants' motions to exclude Dr.

Vance's testimony[56] are GRANTED IN PART and DENIED IN PART.

4.    Vox's motion to exclude Mr. Kerr's testimony[57] is GRANTED.

5.    Vox's motion to exclude Dr. Rowe's testimony[58] is GRANTED IN PART and

DENIED IN PART.[59]

---

[52] Fed. R. Evid. 702(a)-(b).

[53] *Daubert*, 509 U.S. at 590 (stating that an expert's methodology should not be founded on subjective belief or unsupported speculation).

[54] ECF No. 171.

[55] ECF No. 175.

[56] ECF Nos. 177, 184.

[57] ECF No. 185.

[58] ECF No. 189.

[59] As a final matter, the court considers Vox's evidentiary objections.  ECF Nos. 253-55.  To the extent that those objections relate to the Prodigy Defendants' and the Johns Defendants' mischaracterizations of certain deposition testimony, the objections are moot because the court carefully considered the entirety of the relevant deposition transcripts.  To the extent that those objections contain additional argument, the court notes that evidentiary objections are not

IT IS SO ORDERED.

DATED February 22, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

intended to serve as a Trojan Horse for filing a sur-reply without leave of court.  Most of Vox's objections do just that because they do not contain any evidentiary objections but, instead, merely present additional argument about points made in prior briefing.  That is not the purpose of evidentiary objections under DUCivR 7-1(b)(1)(B).